**WILSON et, Plaintiffs, v. DUNKLE, Exr. et, Defendants.**

Common Pleas Court, Licking County.

No. 41084.   Decided January Term, 1955.

Allen I. Pretzman, Columbus, on behalf of plaintiffs.

Norpell & Norpell, Newark, on behalf of John S. Dunkle, executor.

J. Dale McNamar, Newark, on behalf of Mary Collopy.

John S. Dunkle, Columbus, on behalf of Thomas L. Enright and Madeline McCann.

Vorys, Sater, Seymour & Pease, Columbus, on behalf of The Children's Hospital.

## OPINION

By HOLTSBERRY, J.

Does the amended petition of plaintiffs herein state facts sufficient to constitute a cause of action? Branch I of defendants' demurrer claims it does not.

The amended petition of plaintiffs asks for specific performance, or if this be not ordered that a decree be entered impressing a constructive trust.

As stated in the amended petition, on July 10, 1953, John S. Dunkle, was appointed by the Probate Court of Licking County, Ohio, as Executor of the estate of Perin B. Monypeny, deceased, and is still acting as such; that the deceased died testate on June 20, 1953, and the defendants Colopy, Aycock, Enright, McCann, and The Childrens Hospital are the sole devisees, legatees and beneficiaries under the last will and testa-

ment of the deceased, which will was dated in March, 1953, and admitted to probate in Licking County on July 10, 1953, and this will is attached to the amended petition as Exhibit B, and another will of said Perin B. Monypeny dated October 16, 1948, is attached as Exhibit A.

The allegations in the amended petition may be condensed as follows:

. As to the first cause of action plaintiffs allege that Perin B. Monypeny and his wife entered into an oral agreement by which his wife agreed to leave him all her estate if she died first, and he agreed under such circumstances to leave all of his estate to the plaintiffs; that she died first; that "in accordance with said oral contract . . . Perin Monypeny, in 1948, reduced the prior oral contract to writing . . . and signed the same . . . said written instrument being a last will and testament," dated October 16, 1948, three and one-half months after his wife died; that "said will of October 16, 1948, is the one relied upon by plaintiffs as constituting the written contract made in pursuance of the prior oral agreement;" that he revoked that will and by a subsequent will he left everything to the defendants; and that as a result of his action, "plaintiffs are entitled to have said contract . . . specifically performed."

The second cause of action is predicated upon and adopts, as part of the first cause of action, the allegations of the oral contract, and plaintiffs allege that a relation of confidence existed between Perin Monypeny and his wife and as a result of the breach of the contract above referred to, "plaintiffs are entitled to have a trust impressed upon" his estate for their benefit.

The third cause of action also incorporated by reference the oral agreement which is alleged in both of the above causes of action, and the alleged oral contract is the basis of the third cause of action. Plaintiffs allege that as a result of the breach of contract defendants obtained property to which plaintiffs are entitled.

It is apparent that each of the three causes of action is predicated upon and totally depends upon the proposition that the will dated October 16, 1948, is a sufficient memorandum of the alleged oral agreement to make a will to satisfy the requirements of §2107.04 R. C., that "no agreement to make a will shall be enforcible unless it is in writing." The allegations upon which each cause of action is founded patently flies in the face of §2107.04 R. C.

In the brief of plaintiffs it is argued that the fact "that Perin Monypeny signed the **contract** is admitted by the demurrer." It is admitted by the filing of the demurrer that Perin Monypeny signed the will of October 16, 1948, but the demurrer would not admit that the will is a contract and therefore it could not be true that an admission is made by the demurrer which makes the statute inapplicable. A demurrer admits all facts well pleaded, but does not admit conclusions of law which are at variance with or unsupported by the alleged facts upon which they depend. (**Toms v. Savings and Loan Association, 162 Oh St 531.**)

An examination of the attached will reveals that the first paragraph contains the usual recitals and declarations. Item I provides nothing more than for the usual payment of debts and directs for burial and a marker. Item II directs the sale of personal property (excepting securi-

ties) makes a bequest of a necklace and provides for a monument for testator's wife and himself in Greenlawn Cemetery. Item III bequeaths some money and provides that Mary Shear (Colopy) may live in Perin's residence during the administration. The next item establishes a trust for some of Perin's wife's relatives and contains provisions for administration of the trust. Item V is a residuary clause providing for distribution after administration of the trust. Item VI contains some additional provisions about financial distribution in the event any beneficiaries are minors. The concluding item, VII, appoints an executor and confers certain powers.

In the above referred to will there are no words of promise or agreement and no words which can in any way be construed as words of promise or agreement. There are no indications therein of any contract or agreement. It is simply a will which has been revoked.

When a will is executed it is the animus testandi existing that makes it a will, and where an instrument, such as the one relied upon as a contract herein, is by its terms a testamentary disposition of property, it must be presumed that the maker signed it understandingly and with the intent that it be a will. A will is simply a statement of the then existing wish or purpose of the maker and as often as his wish or purpose changes he may change the expression of it. The binding force of a contract comes from the aggregatio mentium of the parties. The binding force of the will comes from the fact that it is the last expressed purpose of the testator regarding his property disposition after death. Until death a will is ambulatory. The only receptive breath of life for this paperwriting would have been the law of probate and administration as a last will. It was not such. It is nothing now.

There is no presumption from the mere execution of a will by testator, in absence of words therein which can be reasonably construed as words of promise or agreement or as an indication of a contract or agreement, that such will is a memorandum or note, of an agreement within the meaning of §8621 GC, or an agreement in writing with the meaning of §10504-3a GC.

Since the instrument is purely a revoked will, and does not contain any agreement or words which can be construed as such, the alleged contract which plaintiffs claim was breached, would be unenforcible and anything unenforcible could not be a contract since a contract is a promise or promises, for the breach of which the law gives a remedy. Even Margaret Monypeny, the wife, could not have enforced the alleged agreement herself, and since she would have had no rights to enforce it, anyone claiming to have acquired rights through her certainly would have no standing to enforce such alleged rights.

A paradox is contained in the amended petition when claim is made that the alleged oral contract required everything "be devised to the plaintiffs and Eleanore Aycock." Examination of the revoked will discloses that $10,000.00 was bequeathed to Mary Shear, now Colopy, and also salary and rights to live in the residence. This person is not a relative and is one of the defendants in this action. This revoked will itself contradicts and refutes the claim that the oral contract provided for everything. It is apparent from this disclosure that the revoked

will of October 16, 1948, does not even contain the provisions of the alleged oral contract, let alone reduce the same to writing.

The history of the law of Ohio relating to contracts to make wills falls within two phases; the period before §2107.04 R. C., §10504-3a GC, which became effective September 2, 1935, and the period since the enactment of said section.

Prior to §2107.04 R. C., effective September 2, 1935, there was a question as to whether an oral contract to make a will was within the statute of frauds. Such contracts to make wills were sometimes recognized before 1935 in cases where real estate or real estate and personal property mixed, were involved, and where the statute of frauds would, according to the courts, perpetuate fraud. These cases would not be applicable since 1935. Since said §2107.04 R. C. and the statute of frauds are separate and distinctly unrelated. **Sec. 2107.04 R. C.** is a will statute under the Probate Code of Ohio. The statute of frauds is not a part of the Probate Code and the purpose of its adoption was to require certain contracts to be in writing. The statute of frauds is contained in **§1335.05 R. C., §8621 GC.**

In the case of **Sherman v. Johnson, 159 Oh St 209,** decided April 22, 1953, plaintiff claimed that the following language constituted a contract to make a will:

"My husband and I, consider Janey Sherman, as being our daughter. We raised her from three months old, and we want her to have all our property and everything we own.

                                        (Signed)  Lola  Sherman"

The Court decided that this language did not constitute a contract to make a will. Judge Taft said at page 215 of the opinion:

". . . it is argued that the alleged 'written contract' of June 1946, hereinbefore set out in the statement of facts, is sufficient to constitute a 'memorandum or note' of the 'the agreement upon which such action is brought,' within the meaning of §8621 GC, and an 'agreement * * * in writing' within the meaning of §10504-3a GC. However, there are no words in that alleged 'written contract' which can reasonably be construed as words of promise or agreement, or as an indication of any contract or agreement. At most, the words of that alleged 'written contract' express a desire which Lola Sherman and her husband had when the words were written but there is no written indication that either of them agreed or even intended to bind themselves to continue to have the desire so expressed.

"It is stated in paragraph one of the syllabus in **Kling, Admr., v. Bordner, 65 Oh St 86, 61 N. E., 148:**

" 'The memorandum in writing which is required by the statute of frauds (§4199 R. C.) (Now §8621 GC), is a memorandum of the agreement between parties; and it is not sufficient unless it contains the essential terms of the agreement expressed with such clearness and certainty that they may be understood from the memorandum itself or some other writing to which it refers, without the necessity of resorting to parol proof.'"

"It is contended that the alleged 'written contract' in case No. 33119 'is as specific as the agreement' in **Emery v. Darling, 50 Oh St 160, 33 N.**

E., 715. However, in the memorandum in that case, there were words of promise and agreement, a clear description of what was agreed to and a description of the consideration for the agreement.

"It is apparent, therefore, that there is in case No. 33119, to use the words of §§8621 and 10504-3a GC, no 'memorandum or note,' of 'the agreement upon which' the action was brought and no 'agreement * * * in writing.' Obviously, therefore, unless the words of those statutes are to be disregarded, the judgment of the Court of Appeals in case No. 33119 must be reversed and the judgment of the Common Pleas Court affirmed."

Also, at page 221:

"in the light of these suggestions, the General Assembly in 1935, enacted a law providing 'that §10504-3 GC be supplemented by the enactment of supplemental §10504-3a GC' (116 Ohio Laws 385, 404).

"Sec. 10504-3 GC, the section so supplemented, reads:

"Except noncupative wills, every last will and testament shall be in writing, but may be handwritten or typewritten. Such will shall be signed at the end by the party making it or by some other person in his presence and by his express direction, and be attested and subscribed in the presence of such party, by two or more competent witnesses, who saw the testator subscribe, or heard him acknowledge his signature."

"That section requires that, in order to be valid and effective, a will must comply with certain definite formalities. The reason for such formalities is to prevent the diversion of a decedent's estate from those who would take it under the statutes of descent and distribution except in instances where the decedent has clearly and deliberately expressed an intention to so divert it. If, by contract, the decedent can accomplish the same result, there would be a risk of so diverting his estate, not only without complying with those formalities but also perhaps without even any written agreement. Sec. 10504-3a GC was obviously designed to guard against this and to avoid the risk that future court constructions of §8621 GC would not sufficiently accomplish that purpose.

"As stated by Stewart, J., in Snyder v. Warde, supra, at page 433, et seq.:

"'* * * §8621 GC * * * provides that 'no action shall be brought * * *,' whereas §10504-3A GC provides that 'no agreement shall be enforcible * * *.'"

"'Sec. 8621 GC * * * provides for the agreement or some memorandum or note thereof to be in writing whereas §10504-3a GC provides that the agreement itself shall be in writing. Sec. 8621 GC provides that the agreement or memorandum or note shall be signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized, whereas §10504-3a GC provides that the agreement shall be signed by the party making it or by some other person by his express direction, in which latter case the instrument must be subscribed by two or more competent witnesses who heard such party acknowledge that it was so signed by his direction.

"'In view of all these circumstances and the further fact that the General Assembly knew that this court had, through the years, applied

the statute of frauds to contracts to make a will, it could be pursuasively contended that the legislative branch of the government intended, when it enacted this entirely new section, to require, without exception, an agreement to make a will or a devise or bequest by will to be in writing and that unless the agreement were such it would not be enforcible under any circumstances.' "

The second syllabus of the case of Sherman v. Johnson, supra, definitely states that where a writing does not contain words which can reasonably be construed as words of promise or agrement or as an indication of any contract or agreement that such writing cannot be an agreement in writing within the meaning of §10504-3a GC. (Now §2107.04 R. C.)

Certain authorities cited by plaintiffs in their brief are cases involving the statute of frauds. These Sections, §1335.04 and §1335.05 R. C., require a deed or lease to be in writing to effect a transfer or leasing of real estate. There is a similiarity between this and the old English Statute of Charles II. This statute has nothing to do with the statute of wills. The Ohio cases decided on the basis of the statute of frauds are distinguishable from the case at hand. It is apparent that to avoid confusion §2107.04 R. C., was enacted in 1935. It was intended as a will statute and is contained in a separate title of the Code. The Ohio statute of wills, §§2107.01 through 2107.05 R. C. is also derived from an old English statute, the statute of Henry VIII, of 1540. It has always been treated separately from the statute of frauds. Its purpose has been to give a testator the right to leave an estate by will, it has nothing to do with an intervivos transfer of real property which is the subject of the statute of frauds. Accordingly §2107.04 R. C., must be considered in the light of the will statutes and not the statute of frauds.

Examination of authorities cited by plaintiffs reveal that they were largely decided or written with reference to the statute of frauds and without reference to and before the enactment of the new Ohio will statute. Many of the authorities do not involve a contract to make a will or a will problem.

The following cases define the limits courts have imposed on a contract for mutual wills: **Flower v. Flower, 23 Oh Ap 350; Kenny v. Kenny, 45 Oh Ap 249;** Ohlendiek v. Schuler, 30 Federal, 2d; **McGlone v. Gompert, 52 O. O. 77.**

These last mentioned four cases, among other pertinent things, point out the necessary scrutiny concerning the question of a will claimed to be an agreement. The same reasoning can be found and conclusions reached from an examination of **Kling v. Bordner, 65 Oh St 86,** and **Sherman v. Johnson, 159 Oh St 205.**

It appears to this Court that the agreement to make a will, even before 1935, must have been contained in the writing itself. The 1935 statute along with the case of Sherman v. Johnson, leaves no doubt in the mind of this Court that the demurrer should be sustained.

Since the writing relied upon herein, a revoked will, does not contain words which reasonably can be construed as words of promise or agreement, or as an indication of any contract or agreement, said writing could not be a memorandum or note of any agreement within

the contemplation and meaning of §1335.05 R. C., or an agreement in writing within the meaning of §2107.04 R. C., the amended petition herein does not state facts constituting a cause of action. And upon consideration of the other reasons stated in this opinion and authorities cited, the demurrer is sustained.

In view of this conclusion reached the Court believes it unnecessary to consider or discuss the other grounds for demurrer, namely the failure to present the claim within four months.

Entry shall be prepared and submitted to this Court.